## ASSOCIATED BUILDERS AND CONTRACTORS OF MARYLAND, INC. ET AL. *v.* COMMISSIONER OF LABOR AND INDUSTRY ET AL.

[No. 490, September Term, 1975.]

*Decided April 13, 1976.*

The cause was argued before ORTH, C. J., and MOYLAN and MENCHINE, JJ.

*Joseph I. Huesman,* with whom were *Lerch & Huesman* on the brief, for appellant Associated Builders and Contractors of Maryland, Inc. *Fulton P. Jeffers,* with whom were *James P. Bailey* and *Hearne, Fox & Bailey* on the brief, for appellant Board of Education of Wicomico County.

*Henry R. Wolfe, Special Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General* on the brief, for appellee Commissioner of Labor and Industry. *Stephen B. Caplis,* with whom was *Peter G. Angelos* on the brief, for appellee Baltimore Building and Construction Trades Council AFL-CIO.

MENCHINE, J., delivered the opinion of the Court.

The common issue in these appeals [1] is the question

---

1. Three appeals in one record. Two cases were docketed in the Baltimore City Court. Baltimore City Court case No. 096057 related to the Wicomico County Project and was docketed as entitled: "Baltimore Building and

whether the provisions of the Prevailing Wage Law (Md. Code Article 100, §§ 96-107, 1975 Cum. Supp.) apply to separate construction projects in Wicomico and Talbot Counties.

The issue had been raised before the Commissioner of Labor and Industry by separate actions by the Board of Education of Wicomico County and by the Board of Education of Talbot County. The facts giving rise to the issue are not in dispute and will be set forth herein under the headings: (a) The Wicomico County Project; and (b) The Talbot County Project.

## The Facts

(a) The Wicomico County Project.

The Board of Education of Wicomico County had proposed an addition to the existing Delmar Elementary School that included: (a) the use of maple wood flooring within a gymnasium; and (b) replacement of the roof over the existing multi-purpose room of the school. The Interagency Committee of the Board of Public Works of Maryland excluded the use of State funds for the recited items. Wicomico County thereupon undertook to pay for the items, a contribution of $25,000.00 [2] to the total project cost of $2,278,565.00. The project then was to be contracted as initially planned.

(b) The Talbot County Project.

The Board of Education of Talbot County had proposed an

Construction Trades Council, Appellant [below] v. Associated Builders and Contractors of Maryland, Inc. and the Board of Education of Wicomico County, Appellees [below]." Both Associated Builders and Contractors of Maryland, Inc. and the Board of Education of Wicomico County, appellees below, are the appellants in the appeal of that case to this Court. Baltimore City Court case No. 096292 related to the Talbot County Project and was docketed as entitled: "Request for Waiver of Applicability of Prevailing Wage Law for Talbot County Auditorium Addition to Easton Area Senior High School, Talbot County, Maryland." In the latter case Associated Builders and Contractors of Maryland, Inc. was the actual appellant below and is the appellant in the appeal of that case to this Court. Baltimore Building and Construction Trades Council and Commissioner of Labor and Industry were the actual appellees below in the latter case and are appellees in all cases in this Court.

2. Gymnasium flooring $12,000.00; roof replacement $13,000.00.

addition to the Easton Area Senior High School consisting of a new auditorium with a seating capacity for 1270 persons. The Interagency Committee of the Board of Public Works of Maryland had excluded the use of State funds to provide a seating capacity exceeding 1000 persons. Talbot County thereupon undertook to pay the cost of the additional 270 seats, a contribution of $110,000.00 to the total project cost of $1,087,997.00. The project then was to be contracted as initially planned.

*The Proceedings Before the Commissioner*

(a) The Wicomico County Project.

The Board of Education of Wicomico County, by letter dated August 7, 1974, requested the Commissioner of Labor and Industry to determine that §§ 96-107 of Code Article 100 did not apply to the Delmar Elementary School project. After investigation and hearing and purporting to act under § 101 of that Article,[3] the Commissioner reached, *inter alia,* the following conclusions:

---

3. Article 100, § 101 reads as follows:

"§ 101. *Investigations.*

(a) *Object of investigations; observation of work; interviewing employees; review of books and records; complaints; statements by employee treated as confidential.* — The Commissioner shall cause investigations to be made as may be necessary to determine whether there has been compliance with provisions of this subtitle and the regulations promulgated thereunder. Contractors and subcontractors on public works shall permit representatives of the Commissioner to observe work being performed upon the work site, to interview employees and to review the books and records on the project being investigated to determine the correctness of classifications, ratios of apprentices to mechanics and payment of proper regular and overtime wage rates as required. Complaints of alleged violations shall be investigated promptly and statements, written or oral, made by an employee shall be treated as confidential and shall not be disclosed to his employer without the consent of the employee.

(b) *Procedure upon determination of violation.* — Following investigation as provided in subsection (a), if the Commissioner determines that any of the provisions of this subtitle may have been violated, the Commissioner shall immediately notify the public body interested, which shall withhold any payment on account thereof, due the contractor or the subcontractor constructing said public works, sufficient moneys to satisfy said sums as may be considered necessary (1) to pay the workmen and apprentices employed by the contractor or any subcontractor the full amount of wages required by the provisions of this subtitle; and (2) to

"In Wicomico County a contribution of $25,000.00 represents approximately one cent on the real property tax rate.

"It is agreed by all parties that the contribution is not being made for the purpose of avoiding the effect of the prevailing wage statute.

"The purpose of the contribution is bona fide within the meaning of the law."

He then made a determination that Code Article 100, §§ 96-107 "is not applicable to the Delmar Elementary School Project, Wicomico County, Maryland."

Associated Builders and Contractors of Maryland, Inc.;

---

satisfy any liability of any contractor for liquidated damages as provided herein, pending a final determination.

(c) *Hearing; filing of order.* — Within thirty (30) days after an investigation has been completed, the Commissioner shall order a hearing thereon at a time and place to be specified and shall give notice thereof, together with a statement of the facts disclosed upon such investigation, which notice shall be served personally or by mail on all interested persons, including the interested public body. Every interested person shall have an opportunity to be heard in respect to the matters complained of, at the time and place specified in such notice, which time shall not be less than ten (10) days from service of the notice. The Commissioner in such an investigation and hearing shall be deemed to be acting in a judicial capacity and shall have the right to issue subpoenas, administer oaths, and examine witnesses. The investigation and hearing shall be expeditiously conducted, and upon such hearing and investigation, the Commissioner shall determine the issues thereon and shall make and file an order in his office stating such determination and forthwith serve a copy of such order, together with notice of filing upon the public body interested, and the parties to such proceeding, either personally or by mail.

(d) *Payment of wages due and satisfaction of liquidated damages; rules and regulations; suit by employee not precluded by determination of restitution.* — Upon the entry and service of such order, the public body interested shall pay to the workmen and apprentices the full amount of wages due and shall satisfy the liquidated damages, as determined by the Commissioner, from the moneys due the contractor or subcontractor. The Commissioner is hereby authorized and empowered to make any and all rules and regulations from time to time, that may be necessary to effectuate the purposes of this subtitle, including, but not limited to, the authority to make a determination as to the amount of restitution and the amount of liquidated damages to be assessed for violations of the provisions of this subtitle. In no event shall such determination of restitution preclude an employee from instituting suit to recover any payments due him.

(e) *Contractor may withhold sums from subcontractor.* — It shall be lawful for any contractor to withhold from any subcontractor under him sufficient sums to cover any amounts of money withheld from him pursuant to this section by the awarding body on account of said subcontractor's failure to comply with the provisions of this subtitle, and if payment has already been made to him, the contractor may recover said sums from him in a suit at law."

Baltimore Building and Construction Trades Council, AFL-CIO and the Board of Education of Wicomico County had been interested parties at the hearing. Baltimore Building and Construction Trades Council, AFL-CIO, aggrieved by the Commissioner's decision, filed an appeal to the Baltimore City Court.[4]

(b) The Talbot County Project.

The Board of Education of Talbot County, by letters dated September 30, 1974 and October 11, 1974, requested the Commissioner of Labor and Industry to determine that §§ 96-107 of Code Article 100 did not apply to the Auditorium Addition to Easton Area Senior High School Project. After investigation and hearing, and purporting to act under § 101 of that Article, the Commissioner reached, *inter alia*, the following conclusions:

"That the plans and specifications submitted by Talbot County provide for the construction of the auditorium with seating capacity increased to 1270.

"That the increased seating capacity of the auditorium by Talbot County is for the stated purpose that said auditorium will be used as a cultural center for residents of Talbot County.

"That the contribution of Talbot County towards the estimated total cost of the project is the cost of the additional seating over and above the 1000 seat capacity approved by the State Interagency Committee.

"That the contribution by the County for the additional seating is for a community purpose rather than an education purpose, and is not a bona fide purpose within the meaning of Article 100, Sections 96-107, Annotated Code of Maryland (1974 Supplement)."

---

4. The question whether the proceedings before the Commissioner constituted a "contested case" within the meaning of the Administrative Procedure Act (Md. Code Article 41, §§ 244-256) was not raised below or in this Court. In the absence of briefing and argument and because we hold that both of these projects are not within the purview of the "Prevailing Wage Law", we shall not discuss the question *sua sponte* under Rule 1085. But see the Statute under which Commissioner acted as set forth herein in footnote 3, *supra*, and Criminal Inj. Comp. Bd. v. Gould, 273 Md. 486, 499, 331 A. 2d 55, 63, 64 (1975).

He then made a determination that Code Article 100, §§ 96-107 "is applicable to the Talbot County Auditorium Addition to Easton Area Senior High School [Project], Talbot County, Maryland."

Associated Builders and Contractors of Maryland, Inc., Baltimore Building and Construction Trades Council, AFL-CIO and the Board of Education of Talbot County had been interested parties at the hearing. Associated Builders and Contractors of Maryland, Inc. and the Board of Education of Talbot County, aggrieved by the Commissioner's decision, filed an appeal to the Baltimore City Court.[5]

### *The Proceedings in the Baltimore City Court*

Both appeals were heard in the Baltimore City Court on March 3, 1975. The Commissioner's decision in the appeal concerning the Wicomico County Project was reversed; his decision in the appeal concerning the Talbot County Project was affirmed. In sum, the trial court decided that both projects came within the purview of the Prevailing Wage Law.

### *The Decision*

We shall reverse. We hold that both projects are without the purview of the Act. That public school construction contracts may be public works within the purview of the provisions of the "Prevailing Wage Law" is not open to doubt. *Demory Brothers v. Board of Public Works,* 20 Md. App. 467, 316 A. 2d 529 (1974), affirmed 273 Md. 320, 329 A. 2d 674 (1974). This is not to say, however, that the provisions of the Prevailing Wage Law become enlarged in scope or broader in application when a particular contract involves in whole or in part the construction of public schools. Otherwise stated, the issue or question whether the Prevailing Wage Law is applicable in a particular case depends upon whether such project falls within the

---

5. *See* footnotes 3 and 4, *supra.*

definitions of "construction" of "public works" by a "public body" as defined in § 96, subsections (b), (c), (d) (1) and (d) (2) of Code Article 100. That issue or question is not influenced by the circumstance that the contract for the "construction" of "public works" perchance involves school construction.

The above noted subsections of § 96 of Code Article 100 read as follows:

"(b) *'Construction'* includes all construction, reconstruction, improvement, enlargement, painting and decorating, alteration, maintenance or repair.

(c) *'Public works'* includes all buildings, bridges, roads, streets, alleys, ditches, sewage disposal plants, waterworks, and all other *structures or works, constructed for public use or benefit* or paid for wholly or in part out of public funds, except work done by any public utility company pursuant to order of the Public Service Commission or other public authority, whether or not done under public supervision or direction or paid for wholly or in part out of public funds, unless let to contract provided, however, that for the purposes of this subtitle contracts of less than $500,000 shall be excluded.

(d) (1) *'Public body'* means the State or any department, officer, board, commission, agency or instrumentality of the State, and shall include any other agency, political subdivision, corporation, person or entity of whatever nature *when State public funds are the only funds used for the construction of a particular public works*, but, except when made applicable pursuant to the provisions of paragraph (2) of this subsection, this term shall not mean any State agency or instrumentality funded wholly from sources other than the State, *nor shall it mean any county or municipal corporation*, or any department, officer,

board, commission, or agency thereof, *when funds other than State funds are used either in whole or in part for the construction of public works.*

(2) The governing body of any political subdivision of this State may provide by resolution or ordinance that the political subdivision shall be covered by this subtitle and included within the scope of its provisions and any such political subdivision shall constitute a 'public body' within the meaning of this subtitle when the Commissioner is notified in writing by the governing body that such action has been taken." (Emphasis added.)

We note at the outset that neither Wicomico County nor Talbot County has provided by resolution or ordinance that those political subdivisions shall be covered by the Prevailing Wage Law. Thus subsection (d) (2) has no application to either County.

Unlike the contract under consideration in *Demory, supra,* the items in both the Wicomico County and Talbot County projects for which each County provided funds, plainly fell within the words "Construction" and "Public Works" as defined in the Prevailing Wage Law. In short, it is undisputed here that in both projects County funds were used "in part for the construction of public works."

We believe it to be immaterial that Wicomico County's expenditure was limited to but $25,000.00. The Court of Appeals in *Demory, supra,* questioned the propriety of application of the doctrine of *de minimis non curat lex* and although finding it unnecessary to decide the question, commented:

"Since we have found that no real cost was incurred by the payment of these permit fees, it is not necessary that we decide whether the *de minimis* doctrine is applicable in this case. We point out, however, that the legislative history of the 'Prevailing Wage Law' could make it extremely

difficult to apply that law to a project in which any funds other than State funds were utilized. It must be remembered that when the law was enacted in 1969, its provisions were excluded from projects funded *'primarily from sources other than the State.'* Chapter 558, Laws of Maryland, 1969. The 1971 amendment, however, deleted that provision and specifically provided that the law should be applicable 'when state public funds are the *only* funds used for the construction of a particular public works.' Chapter 220, Laws of Maryland, 1971. We assume, without deciding, that when the Legislature said 'only,' it meant 'only.' " 273 Md. at 332, 329 A. 2d at 680.

In the subject case, the Wicomico County funding operated to impose an added cost upon the property owners within its borders equal to one cent upon the tax rate. Moreover, the uncontradicted evidence shows that "the contribution [was] not being made for the purpose of avoiding the effect of the prevailing wage statute." Under such circumstances, we too find it unnecessary to decide the *de minimis* question.

It is also wholly immaterial that Talbot County's very substantial expenditure of $110,000.00 was made "for a community purpose other than an education purpose." The uncontradicted evidence shows that the increase of 270 seats in the school auditorium was provided for the benefit of the citizens of Talbot County and plainly fell within the definitions of "Construction" and "Public Works" in the Prevailing Wage Law.

In the proceedings before the Commissioner, the architect and engineer of the Talbot County Project explained at some length the basis of need for an auditorium seating 1270 rather than 1000 persons. He testified, *inter alia,* as follows:

> "Is there anything you want to tell us about this particular project? Anything you could tell us, such as why it's being enlarged — and the nature —

A You mean why the auditorium is —

MR. SAUL: No.

A Why it's larger than — well, Talbot County goes in for a lot of plays and concerts and things like that and it's really an auditorium for the entire county and not just for Easton High School, but they treated it as to Easton High School . . . .

\* \* \*

Q Will the auditorium be located on the school grounds?

A Attached to existing building.

Q And look like a part of the existing building, upon completion?

A That's right.

\* \* \*

Q . . . As I understand it, the Talbot County Board of Education, did apply to the interagency commission, to fund this entire project.

Is that correct?

A That's correct.

Q But the interagency commission has indicated by this letter of October 21, exhibit 1, declining to do so?

A That's correct.

Q And it was on that basis that the county then agreed, according to their letter of October 16, exhibit 9, to budget an estimated $115,000?

A 115 —

Q For this project?

A And they will go more if necessary, based on the formula that I mentioned. . . . 11 square feet per seat. See, it takes seven and a half per seat in the auditorium, plus the aisles and cor-

ridors which we rounded off at 11 square feet per seat, plus the cost of the seat.

\* \* \*

Q Mr. Elliott, you said that the local citizens wanted at least 170 [sic] seats?

A That's right.

\* \* \*

Q Is that the community council of some sort?

A Well, it is the county council, formerly county commissioners — they are called the county council now and the citizens.

\* \* \*

[Talbot County citizens] have to go to Queen Anne for all their concert and plays, which has a 1260 seat capacity.

Q You say —

A In other words, they want a larger auditorium that is normally allowed for —

Q Cultural and social activity for the county in general?

A That's right.

Really the county council went along with it because it's for the whole —

Q Right, and the county commission, which is now the county council, has, as you have indicated here — they had a request by the citizenry and so on, and the leaders of the community, and they agreed to put up the differential, which is roughly $115,000?

A That's right.

Q Would it also be fair to say, as you testified, that the county commission or county council consistent — with their decision — prepared to pay even more to accomplish this extra —

A  They expected to pay in excess of $115,000 when they started out.

First, they wanted to pay for two sets of plans, one with 1270 and one with 1,000. That didn't work out, even though it made a bigger fee for me.

It wasn't fair to the contractors or to anybody, so then, we worked out this formula with the interagency and it's better for all concerned."

The Talbot County project was no less a "Public Works" because it served both education and other "public uses and benefits." Code Article 100, § 96 (c), *supra*.

Because both projects involve "funds other than State funds ... used ... in part for the construction of public works" (§ 96 (d) (1), *supra*), neither is within the purview of the Prevailing Wage Law.

*Judgments reversed.*
*Three-fourths of the costs to be paid by the appellee Baltimore Building and Construction Trades Council, and one-fourth of the costs to be paid by the appellee Commissioner of Labor and Industry.*