ARTHUR M. LOVE, JR. *v.* GEORGE F. BACHMAN, JR. ET AL.

[No. 453, September Term, 1977.]

*Decided January 13, 1978.*

556

The cause was argued before MORTON, LOWE and MASON, JJ.

*Douglas G. Worrall,* with whom were *Smith, Somerville & Case* on the brief, for appellant.

*John M. Court, Assistant County Solicitor,* with whom was *Michael R. Roblyer, County Solicitor,* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

Arthur M. Love, Jr. (Love), the architect of a now completed school, appeals from the Anne Arundel County Circuit Court wherein the trial judge sustained, without leave to amend, a demurrer of appellees [1] who comprised the County Council of

---

1. The appellees are George F. Bachman, Jr., Wallace R. Childs, H. Erle Schaffer, Ronald C. McGuirk, Sarah E. Carter, Edward C. Ahern, Ann C. Stockett and Virginia P. Clagett, constituting the County Council of Anne Arundel County.

Anne Arundel County (Council). Love had petitioned for a mandamus [2] praying that the Council be required to

"Levy and collect such tax upon the assessable property of Anne Arundel County which, together with other local revenue available, including income tax revenues and bond monies and together with estimated revenues and funds from all sources, will produce $99,000.00 plus accrued interest and costs due the Petitioner. [and]

Pay over said sum to the Board in order that the Petitioner may be paid."

This sum, we were told, was that which remained unpaid under an architect's contract made with the Board of Education of Anne Arundel County (Board) pursuant to its authority. See Md. Code, Art. 77, § 47 (a) and (c). Apparently the contract initially established a percentage fee based upon construction costs. When the General Assembly subsequently adopted the State school construction program, Md. Code, Art. 77, § 130A, the architectural fees assumed by the State were limited to a percentage less than that established in the contract. Supposedly relying on the State assumption of the *entire* construction program for the school in question, the Council rescinded a bond ordinance which it had passed and by which it had conditionally approved the capital construction project. Prior to that rescission, but after the Board's construction budget had been approved (subject to the bond ordinance), the Board had entered into the contract with Love. Love has now performed and has been compensated by the State only up to its maximum allowance which is $81,000 [3] less than the agreed upon fee.

A concise "STATEMENT OF WELL-PLEADED FACTS", set forth by appellees in the record provides a full and fair

2. Appellant filed his initial Petition for Writ of Mandamus on November 7, 1974. An Amended Petition was filed on April 1, 1975. It is this second amended petition to which all references in this opinion are made unless otherwise specified.

3. Appellant also contends entitlement to $18,000 additional for work and services under the contract.

resumé of appellant's amended petition to which appellees' demurrer was sustained without leave to amend.

"In 1970 the Anne Arundel County Council ('Council') approved the annual budget for the Board of Education of Anne Arundel County ('Board') which contained an appropriation of $7,212,000 for the construction of the Old Mill Senior High School. In connection with the approval of the Board's annual budget, the Council enacted Bill No. 45-70, which appropriated $7,212,000 for the construction of the school, subject to funding from future bond authorizing ordinances. The requisite bond authorization was provided by Bill No. 60-70, [4] authorizing the issuance of the County's general obligation bonds to provide, among other things, $7,212,000 for the construction of the Old Mill Senior High School.

In connection with the construction of the Old Mill Senior High School, the Board entered into a contract with the Petitioner for architectural services. As the result of the Board's failure to pay the Petitioner fully pursuant to the contract, the Petitioner filed suit in the Circuit Court for Anne Arundel County. See Love v. Asaki, et al., Law No. C-7464. On March 1, 1974 a judgment in that case was entered against the Board and the balance due under that judgment is $81,000. Petitioner also claims an additional amount of $18,000 for work performed in connection with the construction of the school. The Board of Education has refused to pay the Petitioner the $99,000 because the Council has refused to pay to the Board the $7,212,000 appropriated in fiscal 1971 to pay for the construction of the school."

---

4. Bill No. 60-70 was not included in the record. For purposes of demurrer, we will assume that it was enacted prior to the contract between the Board and Love as the parties have done. There is some question whether that is the proper sequence; however, what effect that might have on the validity of the contract is not an issue here.

Because a demurrer shall state "in detail" the question of law or insufficiency of substance upon which the demurrer is founded, Md. Rule 345 b,[5] we find it propitious to set forth appellees' express grounds in full: [6]

"1. The duty of the Anne Arundel County Council to pay the Board of Education $99,000 of $7,212,000 appropriated in fiscal 1971 to finance the construction of the Old Mill Senior High School is not sufficiently clear to support the issuance of a writ of mandamus.

2. The Petitioner lacks standing to enforce by a writ of mandamus a duty owed by the Respondents to the Board of Education of Anne Arundel County."

Because the trial judge assigned no reasons for sustaining the demurrer, we are left to guess which of the two grounds he relied upon — the absence of a clear legal right in appellant (standing) or the absence of an imperative duty on the part of appellees. Since both are prerequisite grounds for issuance of a writ of mandamus, *Buchholtz v. Hill*, 178 Md. 280, 288-289, we must discuss each one.

### Appellant's Standing

Appellees contend that appellant lacks standing because the duty asserted (which we will treat subsequently) is not one owed to the public directly, but is owed rather to another branch or department of government. The Maryland authority upon which they rely (and which alone binds us) is summarized in their brief as follows:

"The rule in Maryland is that a private person 'may move for a *mandamus,* to enforce a public duty, *not due to the government as such,* without the intervention of a government law officer.' (Emphasis supplied.) *Levering v. Williams* [*Park Com-*

---

5. Applicable here pursuant to Md. Rules BE 41 and 373 b.

6. Appellees, as demurrants, did not contend in the demurrer that appellant has some other adequate remedy at law. See, *e.g.,* Hardcastle v. Maryland and Delaware Railroad Company, 32 Md. 32, 35. That issue, therefore, is not before us.

*missioners*], 134 Md. 48, 59 (1919). On the other hand, if the duty owed is to the government itself, or a department or representative of the government, the writ of mandamus may be brought only by the government itself. This was the clear holding of the Court of Appeals in *Heghinian v. Ford*, 209 Md. 113 (1956)."

The phrase appellees have quoted from *Levering v. Park Commissioners, supra,* was itself expressedly taken from *Pumphrey v. Mayor & C. C. of Balto.,* 47 Md. 145, 154. Had appellees gone to that source, they would have found in the preceding paragraph at page 153, the following, far more appropriate sentence in which "[a]ll the authorities concur:

" . . . [W]here the petitioner has a personal interest in the matter, different in kind from that of the general public, he is entitled to the writ."

It is obvious even from appellees' summary of admittedly well-stated facts, that appellant "has a personal interest in the matter, different in kind from that of the general public . . . ." That is also the assumed prefatory predicate upon which appellees' other Maryland authority, *Heghinian v. Ford,* 209 Md. 113, 117, relies.

"*Since the appellant has no interest in the matter different from that of any member of the general public,* we must examine the right of a citizen to compel action by a public official. *Mandamus was originally a prerogative writ and a private citizen could not obtain it to compel performance of a public duty unless he had an individual and separate interest in the matter,* not common to other citizens, and it was necessary for a government law officer to move for the *mandamus.* Later the prevailing view came to be, generally and in Maryland, and long has been, that ' * * * private citizens may move for *mandamus,* to enforce a public duty, not due to the government as such, without the intervention of the government law officer.' *Pumphrey v. Baltimore*

[*Mayor & C. C. of Balto.*], 47 Md. 145, 154. The rationale of this rule seems to be that if the duty is one in which the public, or a segment of the public, has an interest, an individual who is a member of the group which has such an interest may act on behalf of that group by virtue of the interest he shares with the others. It is still true, nevertheless, that to be entitled to the issuance of the writ of *mandamus,* the relator must have a real interest in the subject matter of the suit whether it be his alone or shared by a great number of people, and the respondent must owe him, or the group of which he is a member, an imperative duty. *Pressman v. Elgin,* 187 Md. 446, 452; *Buchholtz v. Hill,* 178 Md. 280, 288." (emphasis partially added).

See also *Liquor Stores Assn. v. Commrs.,* 171 Md. 426, 428-429.

We agree with appellant that a citizen with a peculiar interest has standing to enforce a judgment against a county, although it was obtained by him against another legal political entity.[7] *Labette County Com'rs v. Moulton,* 112 U. S. 217.

> "The question is, whether the respondents, to whom the writ is addressed, have the legal duty to perform, which is required of them, and whether the relator has a legal right to its performance from them, by virtue of the judgment he has already obtained. If so, then they are, as here, the legal representatives of the defendant in that judgment, as being the parties on whom the law has cast the duty or providing for its satisfaction. They are not strangers to it, as being new parties, on whom an original obligation is sought to be charged, but are bound by it, as it stands, without the right to question it, and under a legal duty to take those

---

7. Md. Code, Art. 77, § 38 declares each county board of education to be "a body politic and corporate ... capable to sue and be sued ...."

steps which the law has prescribed as the only mode of providing means for its payment. [*Id.* at 221].

. . .

It can make no difference in principle that in a particular case the law, instead of casting the performance of the entire duty upon a single person, has divided it among several, each to perform but one act in the series, and each acting independently and not as responsible to any of the others, but all required to cooperate in the attainment of the single result, and by a continuous and uninterrupted succession, so as to preserve the integrity and unity of the performance as an entire duty.

The relator is entitled to an effective writ, and he can have it only on the terms of joining in its commands all those whose co-operation is by law required, even though it be by separate and successive steps, in the performance of those official duties, which is necessary to secure to him his legal right. Otherwise the whole proceeding is liable to be rendered nugatory and abortive." *Id.* at 224.

Finally, although the issue of parties was not raised in the demurrer, we note that having pled that the sole reason for the Board's failure to pay the judgment was "because the Respondents (appellees) have failed and refused to pay over to the Board the funds appropriated to pay for the Center" (school), it is implicit that but for the Council's recalcitrance, the Board would be willing to perform. Where the duty owed requires the performance of several acts, those who are willing to perform need not be joined as respondents, 55 C.J.S. *Mandamus* § 252.

### Appellees' Imperative Duty

The reason first assigned by appellees (but treated here inversely) was that the duty of the Council to pay the Board $99,000 of the $7,212,000 appropriated in 1971 is not sufficiently clear to support a writ of mandamus.

Having asserted his contractual rights as having been duly established pursuant to the Board's statutory authority to act upon approval and funding of its budget by the County Council, appellant sets forth the duty of appellees in the final paragraph of his amended petition:

> "The Respondents are required to levy and collect such tax upon the assessable property of Anne Arundel County which, together with other local revenue available, including income tax revenues and bond monies and together with estimated revenues and funds from all sources, will produce the amounts necessary to meet the appropriation for the Center made in the approved annual budget of the Board which the Respondents have failed and refused to do."

While the better practice would have been for appellant to have included a more specific reference to the source of that authority, appellees acknowledge in their brief that it derives from Md. Code, Art. 77, § 117 (e), which provides in pertinent part that the Council shall:

> " . . . levy and collect such tax upon the assessable property of the county which, together with other local revenue available, including income tax revenues and bond moneys and together with estimated revenues and funds from all sources, will produce the amounts necessary to meet the appropriations made in the approved annual budget of the county board of education."

Presumably admitting for purposes of demurrer a procedurally approved budget,[8] appellees invoke three

---

8. Although not included in the record or mentioned as judicially noticed, we find that Section 13 of the Council's Budget Bill No. 45-70 dealing with the capital projects of which the school in question is one, approved these projects:

> " . . . provided that these projects to be funded from future Bond Authorization Ordinances shall not be allotted until such ordinance is adopted and becomes law."

It is not contested that the condition for approval was propitiously met by the enactment of Bill No. 60-70 prior to the contract, as affirmed in appellant's petition.

statutes to provide two reasons to support the contention that appellant has not established an "imperative duty".

First, appellees point out that the very statute upon which appellant relies in order to show an imperative duty has additional procedural requirements which appellant has not alleged were complied with by the Board so as to give rise to appellees' duty. The sentence following the language relied upon by appellant in § 117 (e) provides that:

> "Local funds provided for appropriations shall be paid in accordance with the expenditure requirements as certified by the county board of education to the treasurer of the county board of education on a monthly basis . . . ."

It is not clear to us why the procedural sentence of § 117 (e) relied upon by appellees should be interpreted so that the Council's ministerial duty to pay arose only when the construction contract was fully executed, as appellees advocate. Section 117 (f) requires that in the event the Council fails to appropriate the amount requested by the Board for capital projects, the Council shall indicate in writing what portions of the proposed budget it denied and the reason therefor. While certainly this would not preclude the Council from making a denial, or from approving and subsequently rescinding approval, the underlying rationale of that provision runs counter to the suggestion that the Council can play with school capital improvement budgets at its pleasure until a contract, entered into in reliance on the Council's initial approval of a budget, is fully performed. Subsection (f) (formerly contained in § 68) "was designed, not only to guard against an arbitrary refusal of the County Commissioners to levy the amount deemed necessary by the Board of Education for public school purposes, but also to advise the County Board of Education of the items to which it is required to limit the expenditure of the school tax." *Bd. of Ed. v. Montgomery County,* 237 Md. 191, 202, quoting from *B'd of Education P. G. Co. v. Co. Com.,* 131 Md. 658, 668. (citations omitted). It seems unlikely, therefore, that the construction of the statute urged · by the Council is correct. Additionally, it is questionable whether the Council's action in cancelling the

funding through the repeal of the bond ordinances was a proper exercise of its discretion as it relates to contracts made in reliance upon it. That leads us to appellees' argument.

Appellees point out that the bond authority Bill No. 60-70 was repealed on September 23,1971, prior to the execution of the school construction contract (which appellees inform us was in 1972).[9] Bill No. 82-71 did cancel, rescind and repeal Bill No. 60-70 "but only to the extent that such authority has not been exercised prior to the date of this Ordinance [which was] APPROVED and ENACTED: September 23, 1971." By the petition's chronology of events, to which we are bound on demurrer, it is asserted that the contract between Love and the Council was entered into prior to the effective date of the repeal of Bill No. 60-70. Such contract then, was a valid exercise of the statutory authority of the Board to contract subject to budget approval and funding from bond authorization ordinances, as provided under Art. 77, § 47 (c), since those statutory conditions were met by the Council's enactment of Bills No. 45-70 and No. 60-70, respectively. That contract fell within. the exception of the rescission Bill No. 82-71. To hold otherwise would condone an unconstitutional impairment of a contractual obligation.

In a similar situation in *Farmer v. Jamieson,* 31 Md. App. 37, the complainant had entered into an agreement with Harford County officials for the construction. and operation of a sewage treatment plant. Sometime later, after having given its approval to the project, the County Council amended the Master Plan eliminating the subject property from the Master Plan, and thereafter refused to expend funds for the sewage treatment plant. The complainants sought to have the Council's action in deleting the property from the Master Plan declared invalid. In affirming the lower court's grant of the requested relief, we said: "While the county council has the power to amend the Master Plan they cannot arbitrarily

9. Appellees cite a circuit court case as limited authority for its factual assertion. Assuming for argument's sake that Bill No. 82-71 carried out a repeal as claimed by appellees, the factual question of when the construction contract was executed was not before the court. Because one nisi prius court in another case determined that as a matter of fact the contract was let in 1972, such factfinding is not binding on nisi prius factfinders in other cases. See note 4, *supra.*

impair contract rights." *Id.* at 44. Nor can the County Council here, through the powers it has derived from the State, impair the obligations of a contract. Const. of the United States, Art. I, § 10; see *Von Hoffman v. Quincy*, 4 Wall. 535; *Murray v. Charleston*, 96 U. S. 432; *Steel Co. v. Equitable Society*, 113 Md. 77, 80, *aff'd*, 226 U. S. 455. The very language of the title of Bill 82-71, quoted by appellees, or its relevant enacting clause, limiting the proposed repeal "only to the extent that such authority has not been exercised . . ." clearly indicates a legislative attempt to avoid impairment of contractual obligations in violation of the Constitution.

In the case at bar, the applicant's contract rights were inferentially established at a time when the Board was authorized to act, after the County Council carried into effect the conditional capital budget approval by passing the bond authority to fund the construction project in Bill No. 60-70. The bill authorizing the funding was not repealed until well over a year later, on September 23, 1971. There is nothing in the record that would indicate how much of the contract had been executed at that time; all that is known is that it was fully performed sometime in 1972. (But see note 9, *supra.*) When Bill No. 82-71 repealed Bill No. 60-70, the rescission could not constitutionally, and did not by its own terms, impair the obligation of what is asserted as a valid, binding, subsequently performed, contract.

Language most appropriate, if not precisely apposite, to the issue here appears in *Board of County School Comm'rs v. Gantt,* 73 Md. 521. The issue was whether the County Commissioners could be compelled by a writ of mandamus to pay to the Board of Education the full amount of taxes levied for the use of public schools, without any diminution of that amount. While in that case, the court did not have to command the levying of taxes, as that had already been accomplished, the Court of Appeals held that such a requirement would have been possible under other circumstances. The Court did not hesitate to intervene for the purpose of enforcing the County Commissioners' duty:

"The amount levied for the schools stands to the credit of the appellants on the books of the appellees.

That amount is fixed and ascertained, and the plain duty of the county commissioners is to pay it over. For a breach of that duty *mandamus* is the appropriate remedy. An action at law could accomplish nothing more than to reduce to a judgment the claim confessedly levied ...." *Id.* at 526.

As their final thrust, appellees contend that the subsequent statutory assumption of school construction costs eliminated only obligations of the Council under the contract. The argument appellees assert is that:

"The obligation of the County to fund school capital improvement and construction projects of the Board of Education was further modified in 1971 by the General Assembly's enactment of Chapter 624 of the Laws of 1971. Chapter 624 added a new §130A to Article 77 which provided, *inter alia,* that the State

'shall pay the costs in excess of available Federal funds of all public school construction projects and public school capital improvements in the counties ... which have been approved by the Board of Public Works and for which the contracts have been executed on or after July 1, 1971.'

The purpose of Chapter 624, as set forth in the title to the act, was, among other things, to provide for the State assumption of public school construction and capital improvements. The legal effect of Chapter 624 was to eliminate the obligation of the County under §117 (e) of Article 77 to provide funds to the Board for construction and capital improvement projects for which contracts were executed after July 1, 1971. This, then, would include the Old Mill project for which the construction was executed in 1972."

We do not interpret § 130A to "eliminate the obligation of the County under § 117 (e) of Article 77 to provide funds to

the Board for construction and capital improvement projects for which contracts were executed after July 1, 1971." The State assumption perhaps alleviated the Council's burden to the extent it assumed the responsibility, but it did not obviate the Council's contractual responsibilities beyond that which it assumed. The State School Construction Act provided a source of funds from which the County Council's school construction obligations may be met; however, if the legislative intent had been to "eliminate" the Council's obligation it would have said so, and could have done so in the very same bill that enacted the program which went into effect June 1, 1971.[10] It chose to permit the county's statutory obligations established by § 117 (e) to stand. If the State does not provide funding pursuant to § 130A (an issue we do not inferentially decide), the Council may have a right to seek relief against it as in the nature of a surety; however, the Council's primary obligation to provide funds to parties with whom they are obligated by contract is not impaired by that supplemental source.

Because the grounds stated in the demurrer pursuant to the requirement in Md. Rule 345 (b) were not sufficient to sustain that demurrer without leave to amend, we reverse. We reach only the two grounds presented in the demurrer (although implicitly broadened by argument) and expressly decline to comment upon any other defenses not raised by the demurrer.

We cannot conclude without expressing our hope that in the future the trial judge will provide us with some reasons for his decision, rather than leaving us to guess how he reached his result. We would have benefited by knowing which and what parts, if any, of the ordinances he may have judicially noticed pursuant to Md. Code, Cts. Art., § 10-203, and what, if any, considerations they played in the result he reached. While Rule 18 does not appear to mandate an opinion as to motions, when a decision thereon concludes the litigation, it

**10.** See Demory Bros v. Bal. Public Works of Md., 20 Md. App. 467, 316 A. 2d 529 (1974), affirmed 273 Md. 320, 329 A. 2d 674 (1974); Associated Builders and Contractors of Maryland v. Commissioner of Labor and Industry, 31 Md. App. 171, 355 A. 2d 509 (1976), cert. granted, 278 Md. 715 (1976).

is generally desirable to explain how that conclusion was reached. *Cf. Levy v. Bernstein,* 237 Md. 552, 555.

Henceforth we will require that the party on demurrer, when relying upon an ordinance, expressly so state, pursuant to Rule 345 b., and reflect in the record that the court below had the ordinance before it and did, or could have, relied thereon. The record here had no such indication and the appellees, who were relying upon an ordinance to affirm the trial judge's judgment, with questionable propriety, included ordinances in an appendix, along with other matter not in the record, without motion or order to supplement the record.[11] Indeed, even those parts of Bill No. 82-71 inserted were not the portions which contained the language enacting what was alleged by appellees to be the law. The only relevant portion included was a reference by title indicating what was supposed to have been in the absent body of the ordinance. However, if we had exercised our prerogative to dismiss because of the insufficient record, it is the appellant who would have suffered, not the party relying on the omitted materials.

It should also be pointed out that, in addition to the absence of the reasons by the trial judge for his decision or any record of that which was considered by him, the demurrer in this case was itself insufficient to raise either the application or construction of the statutes or ordinances upon which the demurrants relied. Rule 345 b. requires that a demurrer

> " . . . state in detail the question of law or insufficiency of substance upon which the demurrer is founded."

See *Thomas v. Hardisty,* 217 Md. 523. Under the general assertion that appellant had failed to show appellees' duty to appropriate with sufficient clarity, appellees sought by argument, and received implicitly by the trial judge's ruling, statutory constructions and applications (see Rule 345 a.)

---

11. If the ordinance was not considered by the trial judge he could hardly have judicially noticed it despite Cts. Art., § 10-203. It was not, therefore, a part of the record below permitted in an appendix by Rule 1028 e. and its inclusion should have been explained on motion under Rule 1027 b.

570

which they had not stated in detail as reasons for the demurrer, as mandated by Rule 345 b.

We have responded to the issues argued here, however, despite our inclination to hold appellees strictly to the issues they "detailed" in their demurrer, because we felt it desirable for the guidance of the lower court and in order to avoid the expense and delay, to appellant, of another appeal to this Court. Rule 1085. If, in the future, the punishment of dismissal or remand would more appropriately fit the procedural crimes of omission, we shall so exercise our discretion.

*Order sustaining the demurrer without leave to amend, reversed. Costs to be paid by appellees.*