Dear Jim Rosapepe
You have requested our opinion as to whether an appropriation by the Anne Arundel County Council for fiscal year 2008 related to school construction violated the State law governing school construction funding. When the County budget was adopted, the funds in question were appropriated to a capital project in the County's budget, but not to the budget of Anne Arundel County Board of Education ("Board of Education"). Under local law, these funds could be used for specific school projects only if the County Executive and the County Council agreed to a supplemental appropriation transferring the funds to the Board of Education's budget. You asked whether the County's creation of such an account was consistent with the State laws and regulations that govern the funding of public school construction.
In our opinion, the County's action in this instance was not inconsistent with State law. Here, the County appropriated funds to a relatively small reserve fund in its own capital budget for a possible future supplemental appropriation to the Board of Education's budget to facilitate progress of projects or items not included in the Board's original budget request. However, a reserve fund in a county budget could not be used to circumvent the obligation of a county governing body under State law to accept or reject a local board's capital budget requests in a timely manner and to adopt a capital budget for the local school system that includes the local contribution for school construction. Nor could it be used to *Page 115 
intrude upon a local school board's authority over matters relating to public education.
 I Background
A. Capital Budget Process for Local School Boards
The State education law prescribes a general process for the adoption of a budget for a local school board, including school construction. Annotated Code of Maryland, Education Article ("ED"), § 5-101 etseq. W ithin the parameters and tim etable set forth in that law, a local board of education is subject to the county budget process and procedures. Chesapeake Charter, Inc. v. Anne Arundel County Bd. ofEduc., 358 Md. 129, 139, 747 A.2d 625 (2000); 85 Opinions of theAttorney General 167, 171 (2000).
A county school board is to prepare an annual budget that includes estimated receipts and requested appropriations for both current operations and school construction, set forth according to certain categories specified in statute. See ED § 5-101(b). The proposed budget is submitted to the county government. ED § 5-102. In a county — such as Anne Arundel County — that has a governing body that consists of a county executive and county council, the county executive then decides whether to include the board's entire proposal in the budget that the executive presents to the county council. If the county executive reduces the amounts in any of the categories, he or she is to indicate in writing the reasons for that action. ED § 5-102(c)(2). The county council then considers the executive's proposed budget, including the public schools budget, in accordance with local law. However, State law specifically allows the county council to restore any denial or reduction made by the county executive in the public schools budget. ED § 5-102(c)(3).
With respect to public school construction, the budget proposed by a local school board is to set forth estimated receipts for those purposes according to a variety of sources, including the county and the State, as well as requested appropriations for individual projects. ED § 5-101(b)(3) and (4). The county government then follows the process outlined above, as well as its own procedures, in approving, reducing, or denying requested appropriations for school construction. If the county council elects *Page 116 
not to appropriate the amount requested by the local board of education for capital projects, it is to indicate in writing which projects have been reduced, deferred, or eliminated, and the reasons for that action. ED § 5-107(a). This requirement is designed not only to guard against an arbitrary refusal of a county government to appropriate requested funds for public education, but also to inform the local board as to how to limit its expenditures. Bd. of Educ. of Montgomery County v. MontgomeryCounty, 237 Md. 191, 202, 205 A.2d 202 (1964).
A copy of the public schools budget is to be sent to the State Superintendent within 30 days of its adoption by the county government. ED § 5-102(e)(2).
To fund the local appropriations in the school board budget, a county governing body is to levy and collect a property tax that, together with revenue from other sources, will produce the necessary funds. ED § 5-104(a). The revenues are to be paid over to the school board on a monthly basis in accordance with expenditure requirements, although the county board may require payments related to appropriations for school construction purposes more frequently. ED § 5-104(b).[1] Expenditures for school building construction are to be made in accordance with the cost approved by the county governing body for each project. ED § 5-107(b)(1).[2]
B. State Funding of School Construction Projects 1. Board of Public Works
The State plays a major role in the funding of school construction projects, with the Board of Public Works ("BPW") acting as the control authority. See ED § 5-301(c). The Legislature has authorized the BPW to adopt regulations for the administration of school construction programs, including requirements for the submission of long range plans, annual plans and plans for specific *Page 117 
projects, and data relevant to school construction and capital improvement. ED § 5-301(d)(1) and (2).[3] The regulations are to contain, among other things, provisions establishing a State and local cost-share formula for each county, requiring local educational agencies to adopt educational facilities master plans and annual capital improvement programs, and providing a method for establishing a maximum State construction allocation for each project approved for state funding. ED § 5-301(d)(3)(i), (ii), (iii).
In its regulations, the BPW has established the State share of public school construction funding for eligible costs in each jurisdiction, which currently ranges from 50 to 97 percent. COMAR 23.03.02.05. In particular, the State's share for school construction in Anne Arundel County is currently 50 percent. COMAR 23.03.02.05B(2)(b).
The procedures for approval of State funding are designed to coordinate with local funding. In the event of a conflict between the BPW's regulations and procedures with respect to public school construction or capital improvements and those of the local boards or county governments, the BPW's regulations prevail. ED § 5-301(g).
2. Interagency Committee on School Construction
The Interagency Committee on School Construction ("IAC") was established by the BPW as a unit in the Department of Education and has principal responsibility for the Public School Construction Program. ED § 5-302.[4] The IAC consists of the State *Page 118 
Superintendent of Schools, the Secretary of the Department of Planning, the Secretary of General Services, and two public members appointed by the Speaker of the House and President of the Senate. ED § 5-302(a)(2). The IAC is to prepare projections of school construction and capital improvements needs in accordance with regulations adopted by the BPW. ED § 5-302(d).
3. Planning and Approval Process for State Share of ConstructionCosts
Under the BPW's regulations, the IAC gathers information concerning the long term capital construction plans of local boards of education. Each local school board is to submit annually to the IAC certain planning documents, including a local facilities master plan and an annual and five-year capital improvement program ("CIP"). See COMAR23.03.02. The master plan is to include: educational goals, standards and guidelines; comm unity analysis; an inventory or evaluation of existing school buildings; current and projected enrollment data; and an analysis of future school facility needs. COMAR 23.03.02.02. The CIP, which is to be approved by the county governing body as well as the local board, identifies priorities on an annual and five-year basis for planning and funding approval[5] of new construction and renovation projects. COMAR 23.03.02.03A.
The IAC is to evaluate the merits of the planning and funding approval requests in the local CIPs and rank the requests using factors such as State educational priorities and enrollment projections. COMAR23.03.02.03B. It is to notify the local boards *Page 119 
of its preliminary recommendations and provide them with an opportunity to present additional information pertaining to projects that the IAC has indicated that it does not intend to recommend for approval.Id.
Based on the information it gathers, the IAC is to provide the State's Capital Debt Affordability Committee a projection of school construction and capital improvement needs for purposes of that Committee's estimate of the prudent amount of new State debt that the Committee sends to the Governor and General Assembly by September 10 each year. ED § 5-302(d)(1)(i); Annotated Code of Maryland, State Finance Procurement Article ("SFP"), § 8-112(c)(3). By October 15, the Governor is to determine the preliminary allocation of new State debt for school construction projects. SFP § 8-113.
By December 31 each year, the IAC must submit a preliminary State CIP to the BPW for the next fiscal year. COMAR 23.03.02.03C. Among other things, the preliminary State CIP identifies new construction and other projects for planning and funding approval by the BPW for the next fiscal year. Id. The BPW reviews the IAC recommendations, modifies them as it deems appropriate, and approves the preliminary State CIP.Id. After the State's school construction budget is finalized, the IAC develops a "final" State CIP, subject to the BPW's further modification and approval. COMAR 23.03.02.03D.[6]
The Governor is to submit the State capital budget to the General Assembly by the 20th day of the session — i.e., by late January or very early February. SFP § 8-114. The capital budget is to include a specific allocation for school construction projects.Id. The BPW or the IAC is to notify the local boards of education and county governing bodies about the allocation of State school construction funds recommended by the Governor so that each county can structure its own priorities for school construction funding. ED § 5-302(d). The capital budget bill is subject to *Page 120 
amendment by the General Assembly as a supplementary appropriation bill. Maryland Constitution, Article III, § 52(8).
C. Anne Arundel County Capital Project Related to SchoolConstruction
Your inquiry concerns an appropriation to a capital project in the Anne Arundel County capital budget for fiscal year 2008. We understand that this appropriation, which was denominated as the "School Feasibility and Planning" project ("SFP Project"), was not part of the school construction fund appropriated to the Board of Education, but rather was part of the County capital budget devoted to general County projects.
At the request of the County Executive, the County Council appropriated $2.5 million to the SFP Project for fiscal year 2008. The County budget describes the project as follows:
 This project is to facilitate the timely development of feasibility studies and planning work for school projects eligible for IAC funding. The Board of Education may request funds from this project so as to sequence work on individual school projects to maximize the County's receipt of IAC funding.
Anne Arundel County Capital Budget and Program (FY 2008) at p. 16a.
The County Attorney advises that the SFP Project essentially functions as a reserve fund within the County budget that, under the County Charter, must be reappropriated to the Board of Education budget before the funds may be used for school construction purposes.[7] Letter of Deputy County Attorney David A. Plymyer to Assistant Attorney General Robert N. McDonald (March 27, 2008). Section 706(a)(6) of the County charter caps such reserve funds at 3% "of the general fund and of any other fund." Under Section 712 of the County Charter, a transfer of funds from the SFP Project to the budget of the local school board would require a supplementary *Page 121 
appropriation subject to the approval of the County Council upon the recommendation of the County Executive. Id. Thus, the transfer of funds to the local board's budget would require the concurrence of the County Executive and a majority of the County Council. The County Attorney noted that, once funds are transferred from the SFP Project to the Board of Education budget by this process, the local board's use of the funds is constrained only by State law.[8] Id.
 II Analysis
You have asked whether the inclusion of the SFP Project in the County budget conflicts with the Education Article and other laws governing school construction. In other words, may a county include in its budget a reserve account for school construction purposes that is not itself part of the school construction fund in the local board's budget and which is subject to later approvals by the county governing body before the funds are available to the local board?
To answer this question, we must consider whether the use of a supplementary appropriation process to add county funds to the school capital budget is at odds with State law concerning local funding for school construction. As outlined above, State law requires that a local board of education submit a proposed budget to the county governing body each year on a specified timetable. The capital portion of that budget is to include the public school construction fund, including the local contribution for public school construction. The statute contemplates that the county governing body will promptly approve or modify the proposed budget, including the proposed county contribution to capital expenditures, and adopt a final school budget when it adopts the overall county budget. *Page 122 
The County characterizes the appropriation in question as a reserve fund available for a supplemental appropriation to the local board's budget. No public general law State law prohibits a county from making a supplemental appropriation of unanticipated local revenues to a local board's budget if local law permits supplemental appropriations.Cf. 87 Opinions of the Attorney General 66 (2002) (addressing a restriction on supplemental appropriations in the Public Local Laws of Frederick County). However, the situation presented by your inquiry involves an appropriation of anticipated revenue to a reserve fund subject to a future reappropriation by the County governing body to the Board of Education.
In assessing such a reserve fund, we consider some of the principles governing local financing of public education. First, the State Education law grants the county governing body decisionmaking authority over the public schools budget. But that authority is to be exercised on the timetable and within the constraints of the Education Article. The local board of education has been charged with making and overseeing local education policy. A county could not create a mechanism for extending its budgetary control over the local school board by reducing the local funding for school construction in the board's proposed budget and shifting that funding to a reserve fund in the county budget subject to later county approvals. A county governing body that attempted such an action would have failed to carry out its obligations under ED § 5-102 and would be likely to "intrude upon the local board of education's statutory authority to control educational matters that affect the county." 85 Opinions of the Attorney General at 174.
Second, a county executive or county council may not place conditions on a school budget that attempt to regulate education or intrude on the board's responsibility to set education policy in the county. 85Opinions of the Attorney General at 174 (concluding that, with one exception, conditions proposed by Harford County Executive were reasonable and non-coercive); cf. Love v. Bachman, 38 Md. App. 555, 564,383 A.2d 404 (1978) (rationale of earlier version of ED § 5-107(a) "runs counter to the suggestion that the Council can play with school capital school improvement budgets at its pleasure"). Thus, a county could not place a contingency on an appropriation in the local board's budget that sim ply gave the county governing body a future veto over its expenditure. Such a condition could undermine the local board's prerogatives as to education policy. If the funds placed in the reserve account related to expenditures that the Board of Education had originally included in its budget proposal and that had been cut by the County Executive *Page 123 
or the County Council, the reserve account could be viewed as an improper contingency appropriation.
Third, the local board's budget, particularly as it relates to school construction, is developed against a backdrop of various planning and funding approvals at both the State and county levels. The local board's proposed budget will include the State's contribution to school construction as approved by the Board of Public Works for specific projects; under State law, Anne Arundel County will be responsible for half of the amount eligible for funding each of those projects. In approving the local board's budget, the County Executive and County Council effectively decide whether to meet that obligation and proceed with those projects. Nothing in State law or regulations requires that the County provide the Board of Education unfettered access to school construction funds where the project has not even been approved by the BPW. While a county may not decline to provide its share of funding for approved projects, a county has no obligation to provide immediate funding when a project is still in the preliminary stages and has not yet been approved.
Finally, a true reserve fund typically would be relatively small in relation to the overall budget. For example, as noted above, the Anne Arundel County charter limits the size of any reserve fund to 3% of its general fund or other funds.
The budget process for county funding of local boards of education is "a carefully conceived legislative structure in which the respective powers and limitations of local school boards, the State Board of Education and county governments are delineated and balanced." Bd. ofEduc. of Montgomery County v. Montgomery County, 237 Md. at 197. In assessing whether a county reserve fund for school construction upsets that balance, we would thus pose several questions:
Does the reserve fund relate to projects for which the local board requested funding in its proposed budget and which the county cut in its consideration of the board's budget? *Page 124 
Does the local board's budget already include approved State funding for those projects?
Does the reserve fund represent a significant portion of the county funds designated for school construction?[9]
If the answer to these questions is yes, then it is likely that the creation of the reserve fund is contrary to the State education law. If the answer these questions is no, then the use of the reserve fund is likely consistent with State law.
In this instance we understand that the funds appropriated to the SFP Project were ultimately reappropriated to the Board of Education budget during fiscal year 2008. We also understand that the funds were devoted to projects that had not been part of the Board of Education's original budget request. Finally, the reserve fund in this instance amounted to a very small percentage of the board's capital budget.[10] Thus, in these circumstances, we do not believe that the SFP Project violated the State law concerning funding of public school construction.
 III Conclusion
In our opinion, the County's appropriation of funds to a relatively small reserve fund in its own capital budget for a possible future supplemental appropriation to the Board of Education's budget to facilitate progress of projects not included in the Board's original budget was not inconsistent with State law. However, a reserve fund in a county budget could not be used to circumvent the obligation of a county governing body under State law to adopt a budget for the local school system that includes the local *Page 125 
contribution for school construction or to intrude upon a local school board's authority over matters relating to public education.
Douglas F. Gansler Attorney General
Mark J. Davis Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] In Anne Arundel County, the Board of Education is required to submit semi-annual reports to the County Council detailing its expenditures. ED § 5-106.
[2] A transfer between major categories or of unexpected project balances is subject to the approval of the county governing body. ED § 5-107(b)(2).
[3] The regulations were adopted last year. See 34:10 Md. Reg. 891 (May 11, 2007). Prior to the adoption of the regulations, the Public School Construction Program Administrative Procedures Guide ("Administrative Procedures Guide"), adopted in June 1981, was the primary source of guidance for the administration and operation of the program.
[4] A commission appointed by Governor Marvin Mandel and chaired by then State Senator Harry Hughes to study the State's funding of education recommended in 1971 that the State reimburse the local subdivisions for future approved costs of construction of public elementary and secondary schools. Legislation was then introduced to establish the Public School Construction Program (PSCP) and a bond authorization for Fiscal Year 1972 for $150 million. The enabling statute authorized the Board of Public Works to determine the organization, rules, structure and administrative procedures for the PSCP. The Board, in adopting the Rules, Regulations and Procedures for the Administration of the School Construction Program on June 29, 1971, created the IAC. See www.pscp.state.md.us/GI/gibackground.html (last visited April 23, 2008).
[5] For purposes of the CIP, "planning approval" means the State commits to fund, in some future fiscal years, the State share of eligible costs for a school construction project. COMAR 23.03.02.01B(3). "Funding approval" means the State commits to fund, in the next fiscal year, either the entire or a portion of the State share of eligible costs for a school construction project. COMAR 23.03.02.01B(2).
[6] Additional details about the planning approval process are found in the Public School Construction Program Administrative Procedures Guide. See note 3 above. The Administrative Procedures Guide provides details about the school construction program not found in the regulations, such as the timetable for the submission of design and construction documents by the LEA to the IAC.
[7] In accordance with our usual practice, we defer to the County Attorney on the interpretation of the County Charter. See 90Opinions of the Attorney General 60, 63 n. 2 (2005).
[8] It is our understanding that, since your request for an opinion, the County Council has reappropriated these funds to the Board of Education budget. The County has not created a similar fund in its FY 2009 budget.
[9] A percentage limitation in a county charter, such as the 3% limit in the Anne Arundel County Charter, is not itself the benchmark, as 3% of the entire county budget could conceivably equal all or a very large percentage of the local contribution to the school construction budget.
[10] $2.5 million was appropriated to the SFP Project. The County appropriated more than $130 million in local funds to the Board of Education's capital budget. *Page 126